O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA ORTIZ, | ) Case No. CV 07-05640-OP |
| Plaintiff, | ) |
| | ) MEMORANDUM OPINION; ORDER |
| v. | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /

/ / /

/ / /

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (See Dkt. Nos. 6, 8.)

[2] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

# I.

## **DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues which Plaintiff is raising as the grounds for reversal and/or remand are as follows:

1. Whether the ALJ properly considered the opinion of Plaintiff's treating physician; and

2. Whether the ALJ erred by failing to properly evaluate Plaintiff's credibility.[3]

(JS at 2.)

# II.

## **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the

---

[3] Plaintiff also contends that the ALJ erred by failing to consider her non-exertional impairments in making a residual functional capacity ("RFC") determination. (JS at 2.) Plaintiff's argument, however, is essentially a credibility discussion. Thus, the Court will discuss this issue in its analysis regarding the ALJ's evaluation of Plaintiff's credibility.

Commissioner's decision must be upheld. <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1452 (9th Cir. 1984).

## III.

## **DISCUSSION**

### A. **The ALJ Properly Considered the Opinion of Plaintiff's Treating Physician.**

Plaintiff contends that the ALJ erred by improperly rejecting the opinion of his treating physician, Dr. Richard Shaw. (JS at 5-10, 13-14.) Plaintiff argues that the ALJ failed to consider Dr. Shaw's findings from eight examinations and various treatment suggestions for Plaintiff, such as narcotic pain prescriptions. (<u>Id.</u> at 8-9.) Plaintiff further argues that the ALJ afforded Dr. Shaw less weight because he evaluated Plaintiff in conjunction with a worker's compensation claim. (<u>Id.</u> at 5-6.) The Court disagrees.

It is well-established in the Ninth Circuit that a treating physician's opinions are entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. <u>McAllister v. Sullivan</u>, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. <u>See</u> 20 C.F.R. § 404.1527(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir.1996); <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the

substantial evidence of record. Thomas, 278 F.3d 947, 957 (9th Cir. 2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

However, the Ninth Circuit also has held that "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957; see also Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992). A treating or examining physician's opinion based on the plaintiff's own complaints may be disregarded if the plaintiff's complaints have been properly discounted. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999); see also Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997); Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). Additionally, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict." Andrews, 53 F.3d at 1041; Magallanes, 881 F.2d at 751; Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985).

Here, the ALJ summarized Dr. Shaw's findings as follows:

[Plaintiff] received treatment from rheumotologist and internist Richard Shaw, M.D., for the period March 2004 to June 2005. Dr. Shaw noted that x-rays of the cervical spine were interpreted as showing chronic discogenic disease. Views of the dorsal spine and both shoulders showed mild degenerative changes, while views of the lumbar spine indicated spondylolisthesis and posterior facet sclerosis at L4, L5, and L3-S1. All other x-rays and laboratory studies were essentially normal. Dr. Shaw felt that claimant could not perform any repetitive work

> activities with her hands, wrists and fingers, repetitive or continued work at or above shoulder level, or sitting with her head and neck in a bent forward position. He also indicated that the claimant required a work environment free of undue emotional stress. Dr. Shaw concluded that the claimant was not capable of performing her past work as a special education assistant.

(Administrative Record ("AR") at 18 (citations omitted).) Plaintiff's contention that the ALJ failed to consider Dr. Shaw's examinations and treatment methods is without merit. Dr. Shaw provided a thorough report detailing Plaintiff's complaints and prior medical history, along with his own findings and treatment suggestions. (Id. at 123-42.) As stated above, the ALJ reviewed Dr. Shaw's findings, noting that Plaintiff's x-rays and laboratory studies were "essentially normal." (Id. at 18.) Moreover, the ALJ summarized the functional limitations set forth by Dr. Shaw in the section entitled "Final Conclusions and Discussion." (Id. at 138-41.) Notably, this section also summarizes all of Dr. Shaw's findings from his eight evaluations of Plaintiff and his review of Plaintiff's past medical records. (Id. at 123-42.) Thus, there is no indication that the ALJ failed to review all of Dr. Shaw's relevant findings regarding Plaintiff's impairments and limitations.

Next, after considering the remaining medical evidence and Plaintiff's testimony, the ALJ rejected Dr. Shaw's findings. (Id. at 19-20.) The ALJ stated that Dr. Shaw's conclusions were part of a "medical-legal report" prepared to determine the "apportionment of the claimant's alleged injuries to her work duties" in the context of a workers compensation claim. (Id. at 19.) After pointing out that workers compensation claims have a different method of determining the degree of disability than Social Security claims, the ALJ rejected Dr. Shaw's findings regarding Plaintiff's functional limitations by relying on the

findings of the consultative internist and Plaintiff's testimony regarding her daily activities. (Id. at 19-20.) The ALJ provided:

> Thus, while the undersigned gives significant weight to Dr. Shaw's findings and observations, the undersigned also finds that they are non conclusive in determining the claimant's residual functional capacity in a Social Security proceeding. . . . As stated above, the consultative internist (Dr. Mosharafian) felt that claimant could perform a restricted range of medium work. The report from Dr. Shaw alleged numerous limitations which the undersigned feels are not supported by the any convincing specific objective findings. The numerous aches and pains which the claimant has alleged, involving almost all of her joints are well out of proportion to the apparently minor injuries she allegedly suffered on the job. Other than the cervical, lumbar and right should x-rays, which showed only mild degenerative changes, all of the other studies cited by Dr. Shaw were normal. The claimant has indicated that she spends most of the day going to physical therapy and walking, which denotes an ability to perform a fairly good amount of physical activity. . . . Accordingly, the undersigned finds (consistent with the consultative internist) that the claimant retains the following residual functional capacity: lift 50 pounds occasionally, lift and carry 25 pounds frequently, stand and walk for 6 hours in an 8 hour work day, and no more than occasional stooping or crouching.

Id. (citations omitted).

The Court finds that the ALJ provided specific and legitimate reasons for rejecting the opinion of Dr. Shaw. Thomas, 278 F.3d at 957; Magallanes; 881 F.2d 751; Winans, 853 F.2d at 647. First, the ALJ properly relied upon the opinions of the consultative examiners, namely that of Dr. Behzad Mosharafian,

whose findings contradicted Dr. Shaw's and were based on independent clinical evidence. (AR at 18-20, 160-97); Andrews, 53 F.3d at 1041; Magallanes, 881 F.2d at 751; Miller, 770 F.2d at 849. On November 2, 2005, consultative internist, Dr. Mosharafian, observed that Plaintiff's condition of fibromyalgia, insomnia and headaches was "under moderate control with daily physical therapy including pool therapy and chiropractic visits." (AR at 164.) Dr. Mosharafian further noted that Plaintiff's major complaints are insomnia and stiffness if she does not complete her physical therapy. (Id.) After conducting a consultative internal examination, Dr. Mosharafian concluded that Plaintiff can perform medium work as follows:

> The claimant can lift or carry 50 pounds occasionally and 25 pounds frequently. She can stand or walk for 6 hours in an eight-hour workday. She can sit for 6 hours in an eight-hour workday. There is no limitation of pushing and pulling. [¶] Postural limitation, the claimant has occasional stooping or crouching limitations. Manipulative limitation, there is no gross manipulative limitation. The claimant can reach in all directions. The claimant has no visual, communicative, environmental limitations.

(Id.) Dr. Mosharafian also noted that his assessment of Plaintiff was based upon a physical examination of Plaintiff. (Id.) Additionally, the other consultative examiners provided similar assessments after reviewing the medical record, which supported Dr. Mosharafian's conclusions. (Id. at 170-86.) A "Physical Residual Functional Capacity Assessment" completed on November 16, 2005, confirmed Dr. Mosharafian's RFC finding and also indicated, *inter alia*, that Plaintiff's range of motion and gait were normal. (Id. at 169-76.) Moreover, in a "Request for Medical Advice," a Social Security medical consultant suggested that weight should be given to Dr. Mosharafian's opinion based upon the

objective medical evidence and the partial credibility of Plaintiff's allegations of subjective pain. (Id. at 178-79.) Thus, the ALJ's rejection of Dr. Shaw's findings and reliance upon the findings of the Dr. Mosharafian and the other consultative examiners constituted specific and legitimate reasons based on the substantial evidence in the record. Thomas, 278 F.3d at 957; Andrews, 53 F.3d at 1041; Magallanes, 881 F.2d at 751; Miller, 770 F.2d at 849.

Finally, the ALJ also rejected Dr. Shaw's findings on the basis of Plaintiff's testimony regarding her daily activities. See infra, Discussion Part III.B. Plaintiff testified, *inter alia*, that she spends the majority of the day undergoing physical therapy and laying down due to her pain. (AR at 205, 207-08.) As discussed below, the ALJ properly discredited Plaintiff's testimony regarding her subjective pain complaints by detailing the daily activities that Plaintiff is able to perform despite her alleged pain limitations. (Id. at 19); see also infra, Discussion Part III.B.

Based on the foregoing, the Court finds that the ALJ's rejection of Dr. Shaw's medical opinion was based on specific and legitimate reasons supported by substantial evidence in the record. Thus, there was no error.

**B.   The ALJ Properly Evaluated Plaintiff's Credibility.**

Plaintiff's next contention is that the ALJ improperly assessed Plaintiff's credibility by failing to provide clear and convincing reasons for rejecting her subjective pain testimony. (JS at 14-19, 22-25, 27.) In particular, Plaintiff claims the ALJ failed to consider Plaintiff's complaints of pain, individually or in combination with any other impairments, when assessing her RFC. (Id. at 17-18.) Plaintiff further claims that the ALJ improperly equated her ability to perform various types of therapy with being able to perform a range of medium work. (Id. at 22-25, 27.) Finally, Plaintiff points to objective medical evidence to support

her complaints of disabling pain.  (Id.)

An ALJ's credibility finding must be properly supported by the record and sufficiently specific to ensure a reviewing court that the ALJ did not arbitrarily reject a claimant's subjective testimony.  Bunnell v. Sullivan, 947 F.2d 341, 345-47 (9th Cir. 1991).  An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight."  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986).  When, as here, an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, the ALJ must make explicit credibility findings.  Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that claimant was not credible is insufficient).

Under the "Cotton test," where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so.  See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnell, 947 F.2d at 343.

To determine whether a claimant's testimony regarding the severity of his symptoms is credible, the ALJ may consider, *inter alia*, the following evidence: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course

of treatment; (3) the claimant's daily activities; and (4) testimony from physicians and third parties concerning the nature, severity, and effect of the claimant's symptoms.  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Smolen, 80 F.3d at 1284.

Social Security Ruling ("SSR") 96-7p further provides factors that may be considered to determine a claimant's credibility such as:  1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain and other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  SSR 96-7p.

Plaintiff initially contends that the ALJ failed to consider Plaintiff's complaints of pain when making an RFC assessment.  (JS at 17-18.)  However, the ALJ made explicit findings regarding Plaintiff's subjective symptoms in the body of his decision.  (AR at 20.)  Thus, this contention is without merit.

Here, the ALJ discounted Plaintiff's subjective complaints based upon the objective medical evidence in the record and her daily activities.  (Id. at 19-20.)  First, the ALJ based his adverse credibility determination on the objective findings of the medical sources.  (Id. at 18-20.)  To substantiate this finding, the ALJ relied in part on the x-rays and laboratory studies conducted by Dr. Shaw.  (Id. at 18, 129-31.)  As the ALJ stated, the x-rays and laboratory studies "were

10

essentially normal," indicating mainly degenerative changes. (Id.) Additionally, Dr. Shaw noted that Plaintiff retained a full range of motion, with no evidence of arthritis or acute or chronic deformity, in her extremities and spine. (Id. at 129.) He also noted that Plaintiff retained normal gait, motor tone, bulk and strength through all tested extremities. (Id. at 130.) Moreover, the ALJ relied on Dr. Mosharafian's assessment, which he adopted, to demonstrate that the medical evidence did not support Plaintiff's allegations of disabling pain. (Id. at 18.) As stated above, Dr. Mosharafian observed that Plaintiff's condition was under "moderate control" with daily physical therapy and chiropractor visits. (Id. at 164); see supra, Discussion Part III.A. Dr. Mosharafian further observed, and Plaintiff confirmed in her testimony, that Plaintiff's major complaints of insomnia and stiffness worsened when she did not complete her physical therapy. (Id. at 164, 209.) Furthermore, Dr. Mosharafian concluded that Plaintiff retained a full range of motion and muscle strength in her extremities, with a reduced range of motion in her neck and back. (Id. at 163-64.) While Plaintiff was prescribed medication for headaches, pain, and insomnia, the weight of the other medical evidence does not support Plaintiff's allegations of disabling pain. (Id. at 141.) Accordingly, the ALJ properly discounted Plaintiff's credibility based upon the findings from the medical sources regarding the nature, severity, and effect of Plaintiff's pain symptoms. See Thomas, 278 F.3d at 958-59; see also Smolen, 80 F.3d at 1284.

Next, the ALJ found that Plaintiff's reported daily activities were inconsistent with her allegations of disabling pain. (AR at 18-20.) There is significant evidence in the record detailing Plaintiff's daily activities. At the hearing, Plaintiff testified that she undergoes pool therapy five days a week, for three to four hours daily. (Id. at 205-06.) Her pool therapy consists of exercises using dumbbells to strengthen her arms, walking in the pool with resistance, and

11

swimming with flotation devices. (Id. at 209-10.) Also, Plaintiff often walks for about an hour daily and more on days when she does not complete pool therapy. (Id. at 206.) On days when Plaintiff does not undergo pool therapy, she testified she feels more pain. (Id. at 209.) Plaintiff often, but not everyday, lays down for about an hour to three hours. (Id. at 207-09.) She lives with her daughter, son-in-law, and grandchildren, who help her with gardening, housework, and grocery shopping. (Id. at 207-08.) Plaintiff, however, does some of her own grocery shopping with the exception of lifting heavy items. (Id. at 208.) Additionally, in a complete psychiatric examination, Dr. Steven Brawer noted that Plaintiff is able to care for herself, and she can travel alone with a valid driver's license. (Id. at 189.)

The ALJ relied on Plaintiff's account of her daily activities to determine that Plaintiff can perform a "fairly good amount of physical activity." (Id. at 19-20.) The ALJ reasoned:

> After thoroughly evaluating the claimant's alleged symptoms and limitations . . . , [the ALJ] finds that the claimant is capable of performing a significant range of physical and mental work related activities. . . . The claimant has indicated that she spends most of the day going to physical therapy and walking, which denotes and ability to perform a fairly good amount of physical activity. She has a valid driver's license and is able to travel alone by car. She is also able to do all of her own self-care and hygienic activities without assistance.

(Id.) The Court finds that the ALJ could properly rely on Plaintiff's daily activities, such as completing extensive physical therapy, caring for herself, shopping, traveling alone, and walking, to support his adverse credibility determination. See, e.g., Thomas, 278 F.3d at 958-59 (ALJ may properly consider inconsistencies between claimant's testimony and claimant's daily

activities); Morgan v. Apfel, 169 F.3d 595, 599-600 (9th Cir. 1999) (ALJ may properly rely on contradictions between claimant's reported limitations and claimant's daily activities); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (daily activities inconsistent with total disability undermined subjective testimony of disabling pain); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may properly rely on claimant's daily activities, including ability to drive); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (ALJ may properly rely on daily activities inconsistent with claim of disabling pain); SSR 96-7p.

Plaintiff argues that her ability to complete physical therapy for therapeutic purposes does not equate to being able to function in a work environment. (JS at 22, citing Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).) The Court acknowledges that the ALJ must explain how the activity of performing household chores evidences an ability to perform appropriate work activities. See Orn, 495 F.3d at 639, citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication. . . . Yet if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain."); see also Vertigan, 260 F.3d at 1049 ("[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."); Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (holding that daily activities may not be relied upon to support an adverse credibility determination unless the ALJ makes an explicit finding to the effect

that plaintiff's ability to perform those activities translated into the ability to perform appropriate work activities on an ongoing and daily basis). However, the ALJ only noted that Plaintiff's ability to complete significant physical therapy suggests that she can "perform a fairly good amount of physical activity." (AR at 19-20.) The ALJ did not equate this with Plaintiff's ability to function in a work environment. Thus, there was no error.

Assuming, however, that the ALJ erred by failing to specifically indicate how Plaintiff's daily activities translated to her ability to perform work activities, any error was harmless. See Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990) (harmless error rule applies to review of administrative decisions regarding disability). As stated above, the ALJ relied upon Plaintiff's daily activities and the objective medical evidence to discount her credibility. See supra, Discussion, Part III.A-B. Moreover, based upon the ALJ's determination that Plaintiff retained an RFC to perform medium work, the ALJ concluded that Plaintiff could perform her past relevant work as a teacher's aide. (AR at 20); see also U.S. Dep't of Labor, Dictionary of Occupational Titles [hereinafter "DOT"], § 249.367-074 (4th ed. Rev. 1991). According to the job description of a teacher's aide, Plaintiff would be required to perform semiskilled, light work by assisting the teaching staff with, *inter alia*, the following: taking attendance, grading homework and test, distributing classroom materials to students, maintaining order on school grounds, operating learning aides, preparing requisitions for library materials, and typing and/or duplicating material for the classroom. DOT § 249.367-034. Surely Plaintiff's ability to perform physical activities, such as walking, driving and shopping, would suggest that she is able to perform the lesser physically-demanding activities of a teacher's aide. Thus, assuming the ALJ erred, any such error was harmless. Curry, 925 F.2d 1127

Based upon the foregoing, the Court finds that the ALJ provided clear and

convincing reasons, supported by substantial evidence, for discounting Plaintiff's credibility regarding her allegations of disabling pain. Thus, there was no error.

## IV.

## ORDER

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

Dated: April 29, 2009

HONORABLE OSWALD PARADA
United States Magistrate Judge